**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 25-72-DLB-CJS**

**MARINA DRUS**                                                                                          **PLAINTIFF**

**v.**                              **MEMORANDUM OPINION AND ORDER**

**MICROSOFT CORPORATION**                                                            **DEFENDANT**

\* \* \*   \* \* \*   \* \* \*   \* \* \*

This matter is before the Court on Defendant Microsoft Corporation's ("Microsoft's") Motion to Compel Arbitration and Stay Proceedings. (Doc. # 9). Plaintiff Marina Drus ("Drus") responded (Doc. # 13), and Microsoft replied (Doc. # 14). Soon after, Drus filed a Motion for Leave to File a Surreply (Doc. # 15). Microsoft responded in opposition (Doc. # 17), and Drus replied (Doc. # 19). For the following reasons, Microsoft's Motion to Compel Arbitration and Stay Proceedings (Doc. # 9) will be **granted**, and Drus's Motion for Leave to file a Surreply (Doc. # 15) will be **denied**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In April 2022, Microsoft entered into an agreement with Insight Global, wherein Insight Global agreed to "recruit, select, and train its personnel" to perform certain services for Microsoft. (Doc. # 9-2 at ¶ 5; *see also* Doc. # 9-3). On October 17, 2023, pursuant to this agreement, Insight Global hired Drus as a Data Scientist assigned to work at Microsoft. (Doc. # 9-4 at 10). As a condition of employment, Drus signed a Contract Employee Agreement with Insight Global (*see* Doc. # 9-2 at ¶ 6), which included the following relevant language:

> This Contract Employee Agreement (the "Agreement") is made as of 10/17/2023, between Insight Global, LLC, a staffing services company ("Insight Global"), and Marina Drus (the "Contract Employee") for Microsoft or one of its subsidiaries or affiliates (the "Customer").
>
> This Agreement describes your rights and obligations as a Contract Employee with Insight Global. ***It is important that you read the entire Agreement carefully.*** By signing this Agreement, you consent that any covered future dispute relating to your employment with Insight Global will be submitted to binding arbitration, as explained more fully in Section 21 below. . . .
>
> **21. <u>Neutral binding arbitration, waiver of trial before judge or jury, and waiver of class, collective and representative claims</u>**. . . . [I]n the event of any dispute or claim arising out of or relating to Contract Employee's application for employment with Insight Global, Contract Employee's employment with Insight Global, the termination of Contract Employee's employment, or otherwise relating to this Agreement (collectively, "Disputes"), Contract Employee and Insight Global agree that all such Disputes shall be fully, finally and exclusively resolved by confidential, binding, individual arbitration before the American Arbitration Association ("AAA"). Contract Employee and Insight Global agree that a confidential arbitration, as contemplated by the Federal Arbitration Act and related case law, is the sole and exclusive forum for resolution of any and all Disputes and hereby mutually waive their right to trial before a judge or jury in federal or state court in favor of arbitration under this Agreement. Any arbitration shall be governed by the Federal Arbitration Act, the terms herein and the AAA Employment Arbitration Rules and Mediation Procedures ("Rules") then in effect, except as modified by this Agreement, but shall not be subject to the AAA Supplementary Rules for Class Arbitrations. A copy of the Rules is available at www.adr.org/aaa/faces/rules . . . .

(Doc. # 9-4 at 2, 7). Drus alleges she signed the agreement "to secure desperately needed employment," as a result of "undisputed economic duress [that] stripped her of any meaningful choice in the contracting process." (Doc. # 13 at 2).

Drus alleges Microsoft took adverse employment action against her after she disclosed a disability to her supervisor in December 2023. (Doc. # 1-3 at 4). Drus was terminated from her position with Insight Global on July 25, 2024. (*Id.* at 5). Thereafter, she filed charges with the Equal Employment Opportunity Commission and the Kentucky

Human Rights Commission, alleging that Insight Global discriminated and retaliated against her in violation of United States and Kentucky law. (Doc. # 9-2 at ¶ 7).

Drus initiated this action by filing her Complaint in Boyd Circuit Court. (*See* Doc. # 1). She alleges that Microsoft wrongfully discharged her because of her disability. (Doc. # 1-3). She raises claims of disability discrimination, failure to accommodate, and retaliation in violation of Kentucky and federal law, as well as a breach of contract claim. (*Id.*). Drus seeks damages and injunctive relief to redress her injuries. (*Id.*).

Shortly after being served (*see* Doc. # 1-4), Microsoft removed the action to this Court (*see* Doc. # 1). It then filed the pending Motion to Compel Arbitration and Stay Proceedings (Doc. # 9) and its Answer (Doc. # 10). Drus responded in opposition to Microsoft's Motion to Compel (Doc. # 13) and Microsoft replied in support (Doc. # 14). Drus then filed the pending Motion for Leave to File a Surreply (Doc. # 15), along with a tendered Surreply (Doc. # 15-1). Microsoft responded in opposition (Doc. # 17), and Drus replied (Doc. # 19). These matters stand submitted for review.

## II.    ANALYSIS

### A.    Motion for Leave to File a Surreply

Drus's Motion for Leave to File a Surreply is addressed first. (Doc. # 15). "Surreplies are 'highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1056 (6th Cir. 2024) (quoting *Cousins Smokehouse, LLC v. Louisville Processing & Cold Storage, Inc.*, 588 F. Supp. 3d 753, 763 (W.D. Ky. 2022)). However, "such filings may be allowed in appropriate circumstances, especially 'when new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new

3

evidence has been vitiated.'"  *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).  Drus argues that Microsoft raised four new issues in its reply.  (Doc. # 15 at 1-3).  However, as Microsoft correctly avers (Doc. # 17), each point was previously asserted in its Motion to Compel or in Drus's response brief.

Drus first points to two assertions made by Microsoft in its Reply: (1) that her unsworn factual allegations should be disregarded; and (2) that her unconscionability argument is unpersuasive because she failed to plead any attempt to negotiate the terms of her employment agreement.  (Doc. # 15 at 2).  However, Microsoft raised these points in a broader discussion of unconscionability.  (*See* Doc. # 14 at 1-4).  Whether the agreement was unconscionable is an issue raised by Drus herself (Doc. # 13 at 3-5), so she cannot rely on Microsoft's rebuttal as basis for leave to file a surreply.

Drus next argues that, because Microsoft relied on a previously uncited out-of-circuit case in its Reply for the proposition that the Court should grant its Motion to Compel, she should be granted leave to distinguish that case.  (*See* Doc. # 15 at 2-4 (challenging Microsoft's citation to *Coleman v. Optum Inc.*, No. 1:22-cv-05664 (ALC), 2023 WL 6390665, at *7 (S.D.N.Y. Oct. 1, 2023), in its Reply to its Motion to Compel (Doc. # 14 at 8))).  However, if it were the case that parties could rebut every new authority raised in a reply brief, courts would grant leave to file surreplies as a matter of course. Microsoft persuasively directs the Court's attention to several newly cited authorities asserted by Drus in her tendered surreply.  (Doc. # 17 at 4; *see also* Doc. # 13; Doc. # 15-1).  If the Court granted Drus leave to distinguish one new citation, it would have to grant Microsoft leave to distinguish multiple cases.  *Cf. Leafguard of Kentuckiana, Inc. v.*

*Leafguard of Kentucky, LLC*, No. 5:15-cv-237-DCR, 2016 WL 3088267, at *8 (E.D. Ky. May 31, 2016) (noting that, if a reply rebuts arguments made in a response, and the court were to grant leave "to file a sur-reply under these circumstances, non-movants would be entitled to file sur-replies every time a movant filed a substantive reply brief").

Drus also argues that Microsoft raised equitable estoppel for the first time in its Reply. (Doc. # 15 at 2). That is, however, not the case because Microsoft discussed equitable estoppel as grounds for compelling arbitration in its Motion to Compel. (*See* Doc. # 9-1 at 8). To be sure, in her Reply, Drus recognizes that such an argument *was* made by Microsoft in its Motion to Compel. (*See* Doc. # 19 at 4 ("Microsoft's initial motion contained a boilerplate, two-paragraph argument on equitable estoppel. In its reply, it dramatically expanded this theory[.]" (internal record citation omitted)). Thus, granting Drus leave to file a surreply would be improper here.

Finally, to the extent Drus suggests a surreply is warranted because she included sworn declarations that are necessary to complete a full record (Doc. # 19 at 5-6), she had the opportunity to do so when filing her Response to Microsoft's Motion to Compel. Indeed, her declarations cover issues she argued in her Response. (*Compare id.* at 5-6; Doc. # 15-2; Doc. # 15-3, *with* Doc. # 13 at 2, 5). As such, if Drus wanted to substantiate her allegations, she could have done so at the time she filed her Response. Thus, Drus has not pointed to appropriate circumstances that warrant allowing her to surreply. Therefore, her Motion for Leave to File a Surreply (Doc. # 15) will be **denied**.

### B.    Motion to Compel Arbitration

Microsoft's Motion to Compel Arbitration and Stay Proceedings is considered next. (Doc. # 9). "In the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, Congress has established

5

an 'emphatic federal policy in favor of arbitral dispute resolution.'" *Atkins v. CGI Techs. & Sols., Inc.*, 724 F. App'x 383, 389 (6th Cir. 2018) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011)). The Act "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting *KPMG*, 565 U.S. at 21-22). The FAA strips district courts of all discretion, "instead mandat[ing] that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (quoting *KPMG*, 565 U.S. at 21-22) (emphasis original).

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Here, Drus agreed to arbitrate all "claim[s] arising out of or relating to . . . [her] employment with Insight Global, the termination of [her] employment, or otherwise relating to" her employment contract. (Doc. # 9-4 at 7). It is not in dispute that, if enforceable, the agreement's scope is broad enough to cover each of Drus's claims before this Court. Consequently, if the arbitration agreement is enforceable, the Court must "direct [the] parties to proceed to arbitration." *See KPMG*, 565 U.S. at 21-22.

Nonetheless, Drus challenges the validity of the arbitration agreement. "[T]o show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citing *Doctor's Assocs., Inc. v. Distajo*,

107 F.3d 126, 129-30 (2d Cir. 1997)). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id.*

Under this standard, Drus argues that the action should remain in this Court "because (A) the underlying Arbitration Agreement is unconscionable and void under Kentucky law; and (B) Microsoft, a non-party [to the contract], has no right to enforce it." (Doc. # 13 at 3). Microsoft contends that arbitration must be compelled because (A) the agreement is enforceable and (B) it can enforce the agreement either as a third-party beneficiary or under the doctrine of equitable estoppel.

### 1.     Unconscionability

"Arbitration agreements are 'on an equal footing with other contracts' and may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Hines v. Nat'l Ent. Grp., LLC*, 140 F.4th 322, 327 (6th Cir. 2025) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 624, 630-31 (2009)). In other words, if an arbitration agreement is unconscionable, it is unenforceable. *See id.* Whether a contract is unconscionable is a matter of state law. *See id.* at 328 (applying state law to determine if an arbitration agreement was unconscionable); *see also Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006) (holding that on a motion to compel arbitration, "[t]he district court erred by applying federal common law rather than considering state law contract defenses").

In Kentucky, an unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 (Ky. Ct. App. 2001) (quoting *Louisville Bear Safety Serv., Inc. v. South Cent. Bell Tel. Co.*, 571

S.W.2d 438, 440 (Ky. Ct. App. 1978)).   Kentucky law involves a two-step process in reviewing arbitration clauses for unconscionability, review of procedural unconscionability and review of substantive unconscionability.  *See Schnuerle v. Insight Commc'n Co., L.P.*, 376 S.W.3d 561, 575-76 (Ky. 2012).  Unlike some jurisdictions though, unconscionability in Kentucky occurs where an arbitration provision is either procedurally or substantively unconscionable. *Id.* at 576 n.12. Thus, to render the arbitration agreement unenforceable, Drus need only show that the clause in her employment contract is unconscionable procedurally or substantively, not both.

### a.    Procedural Unconscionability

As the term would imply, procedural unconscionability "pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Id.* at 576 (quoting *Conseco*, 47 S.W.3d at 343 n.22).   Relevant factors "include the bargaining power of the parties, 'the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice.'" *Id.* (quoting *Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 875-76 (11th Cir. 2005)).

Here, there are no signs of procedural unconscionability in the terms of Drus's employment contract.   The second paragraph of the agreement stated, in plain terms, that disputes would be "submitted to binding arbitration, as explained more fully in Section 21 below." (Doc. # 9-4 at 2).  Section 21 was distinctly marked in bold font and underlined. (*Id.* at 7).  The title of the section reads in relevant part "Neutral binding arbitration, waiver of trial before judge or jury." (*Id.*).  The language was also plain and "understandable by an adult of ordinary experience and intelligence." *Energy Home, Div. of S. Energy*

*Homes, Inc. v. Peay*, 406 S.W. 828, 836 (Ky. 2013). Kentucky ordinarily upholds such provisions as not being procedurally unconscionable. *Id.* at 835-36 (holding that an arbitration agreement was not procedurally unconscionable where it identified the arbitration requirement clearly and concisely, was not hidden or obscured, explained arbitration forfeits the right to trial by jury, and the language was ascertainable by an adult of ordinary intelligence).

Nonetheless, Drus argues that her agreement was procedurally unconscionable because it "was a classic contract of adhesion presented on a take-it-or-leave-it basis as an absolute condition of employment." (Doc. # 13 at 3). She points to *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005), for the proposition that arbitration agreements required as a condition of employment are considered unconscionable. (*Id.* at 4). However, Drus's reliance on *Walker* is misplaced because the Sixth Circuit applied Tennessee law in that case, *Walker*, 400 F.3d at 377-78, 384, which is inapplicable here. In Kentucky, so called contracts of adhesion "are not *per se* improper." *Schnuerle*, 376 S.W.3d at 576. Rather, the opposite is true, as "they are credited with significantly reducing transaction costs in many situations." *Id.* Thus, if reviewed at all, contracts of adhesion are scrutinized under ordinary procedural unconscionability review. *See id.*

Drus also directs the Court's attention to the agreement's incorporation of the AAA Employment Arbitration Rules. (Doc. # 13 at 4). Specifically, she argues she could not have assented to the terms of the agreement because Insight Global failed to provide her with a copy of the rules or to explain their import. (*Id.*). However, the contract included a link to a copy of the applicable rules directly following an explanation of which rules would govern any arbitration. (Doc. # 9-4 at 7). And if Drus did not understand the rules

provided, she could very well have asked clarifying questions before signing the agreement.  Consequently, the Court concludes that this otherwise sound arbitration agreement is not procedurally unconscionable.

### b.    Substantive Unconscionability

"Substantive unconscionability 'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Schnuerle*, 376 S.W.3d at 577 (quoting *Conseco*, 47 S.W.3d at 343 n.22).  Relevant factors include "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns."  *Id.* (quoting *Jenkins*, 400 F.3d at 876).

Drus argues that the agreement is substantively unconscionable because it lacks mutuality.  (Doc. # 13 at 4).  In particular, Drus points to a carveout within the arbitration provision that permits Insight Global to pursue injunctive relief in court if Drus breaches confidentiality or non-solicitation covenants.[1]  (*Id.*).  However, Kentucky courts have found where an arbitration agreement is ancillary to a larger contract there is "no inherent reason to require that the parties have equal arbitration rights."  *Conseco*, 47 S.W.3d at 343; *see also Coffman v. AT&T Corp.*, 678 F. Supp. 3d 880, 887 (E.D. Ky. 2023) (holding that in Kentucky "[a]rbitration agreements may be valid, even if there is a *unilateral* arbitration obligation, 'so long as the contract as a whole imposes mutual obligations on both parties.'" (quoting *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (applying Michigan law))).  Thus, standing alone, the carveout permitting Insight Global

---

[1]    Drus points to *Davis v. Global Client Solutions, LLC*, 765 F. Supp. 2d 937, 941-42 (W.D. Ky. 2011), in support of this proposition.  However, the arbitration clause in that case sought to limit the kinds of remedies the plaintiff could recover.  *Id.*  The instant agreement does not seek to limit remedies available to Drus.  It merely limits the appropriate venue to arbitration.

to pursue injunctive relief in court does not render the arbitration agreement substantively unconscionable.

Drus next argues, without pointing to any authority, that arbitration systematically favors employers "by preventing the public and other employees from learning of patterns of misconduct, thereby undermining the public policy goals of civil rights statutes." (Doc. # 13 at 4). Even if Kentucky permitted such a defense, it would likely be preempted by § 2 of the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." (emphasis original)). Given the "emphatic federal policy in favor of arbitral dispute resolution," *KPMG LLP*, 565 U.S. at 21, and the apparent lack of terms "unreasonably or grossly favorable to" Insight Global, *Schnuerle*, 376 S.W.3d at 577, Drus has also failed to show that the employment agreement is substantively unconscionable.

## 2.    Microsoft's Ability to Enforce the Contract

Although a federal policy favoring arbitration exists, *KPMG LLP*, 565 U.S. at 21, it is only applicable "when both parties have consented to and are bound by the arbitration clause" at issue. *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021). Federal courts sitting in diversity "must look to the relevant state's common law to decide when nonparties may enforce (or be bound by) an arbitration agreement." *Id.* at 524. Under this standard, Microsoft argues that it can enforce the arbitration agreement as a non-signatory because (A) it is a third-party beneficiary or (B) Drus, as a party to the contract, is equitably estopped from arguing against the agreement's enforcement.[2] (Doc. # 9-1 at

---

[2]    Microsoft also argues that it can enforce the arbitration agreement under the "closely related" doctrine. (*See* Doc. # 9-1 at 9). However, based on this Court's review of Kentucky law, it does not appear that Kentucky has adopted the "closely related" doctrine. *See Olshan Found. Repair and Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009) ("Five theories for

7-9; *see also* Doc. # 14 at 8-10).  Drus contests those points, arguing (A) that Microsoft is not a third-party beneficiary and (B) that she is not equitably estopped from defending against the agreement's enforcement.  (Doc. # 13 at 5-6).  Because the Court finds that Microsoft is a third-party beneficiary of the instant arbitration agreement, it is not necessary to address whether Drus is equitably estopped from arguing against Microsoft's enforcement of the agreement.

In Kentucky, "[o]nly a third-party who was intended by the parties to benefit from the contract . . . has standing to sue on a contract; an incidental beneficiary does not acquire such right."  *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (citations omitted); *see also Preferred Care, Inc. v. Roberts*, No. 5:16-CV-203-KKC, 2017 WL 424868, at *7 (E.D. Ky. Jan. 31, 2017) (applying the *Presnell Construction* standard on a motion to compel arbitration).  A nonparty is an intended "beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promise to the beneficiary."  *Presnell Constr.*, 134 S.W.3d at 579 n.12 (quoting *Sexton v. Taylor Cnty.*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985)).  In other words, "all that is necessary is that there be consideration for the agreement flowing to the promisor and that the promisee intends to extract a promise directly benefitting the third party."  *Prime Finish, LLC v. Cameo, LLC*, 487 F. App'x 956, 961 (6th Cir. 2012) (quoting *Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 309 (Ky. 1984)).

---

binding nonsignatories have been recognized [in Kentucky]: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." (citations omitted)).  As such, Microsoft cannot rely on it to enforce the instant arbitration agreement as a non-signatory.

Here, the Court observes that the instant contract was made "between Insight Global, LLC . . . and Marina Drus . . . *for Microsoft*."  (Doc. # 9-4 at 2 (emphasis added)). Moreover, the surrounding circumstances lend themselves favorably toward the finding that Microsoft was an intended beneficiary.  *See Prime Finish*, 487 F. App'x at 959 ("Kentucky courts have consistently held that it is appropriate to consider the surrounding circumstances when determining whether a party is an intended beneficiary.").  Insight Global and Drus entered this agreement precisely so that Drus could work as a Data Scientist at Microsoft.  (*See* Doc. # 9-2 at ¶ 6; Doc. # 13 at 3).

Drus argues that because the arbitration provision does not refer to Microsoft, but instead to Insight Global, Microsoft is not an intended beneficiary.  (Doc. # 13 at 5). However, Kentucky courts have long held that, in construing contracts, the agreement as a whole must be examined, not isolated provisions.  *See Siler v. White Star Coal Co.*, 226 S.W. 102, 104 (Ky. 1920) (collecting cases).

> In fact, it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument, and not merely on disjointed or particular parts of it.  The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause.

*Id.* (quotations omitted). Indeed, a third party might be considered an intended beneficiary even where its name does not appear anywhere in the contract.  *See Louisville Gas and Elec. Co. v. Cont'l Field Sys., Inc.*, 420 F. Supp. 2d 764, 772 (W.D. Ky. 2005) ("The Court does not agree that the oral or written agreement must contain specific reference to the third party beneficiary.").  Therefore, the mere absence of Microsoft's name from the arbitration provision does not preclude a finding that Microsoft was an intended beneficiary of the contract.

Drus next points to Section 2(i)(5)(iv) of the agreement between Microsoft and Insight Global (Doc. # 13 at 5-6), which required Insight Global to make Microsoft an intended beneficiary in the event it delegated any duties it owed to Microsoft (*see* Doc. # 9-3 at 5, 9).  Drus argues that, because Microsoft and Insight Global did not come to a similar agreement with respect to employees, Microsoft was not an intended beneficiary of Drus's employment contract.  (*Id.*).  Although this is an innovative argument, it is unpersuasive.  To be sure, had Microsoft and Insight Global assented to making Microsoft an intended beneficiary of Insight Global's employment contracts it would be more likely that Microsoft is an intended beneficiary of the agreement at bar.  However, the absence of such a provision is not dispositive, it is merely one factor in the broader assessment.  *See Prime Finish*, 487 F. App'x at 959.  Here, more and weightier factors lend themselves in favor of the finding that Microsoft was an intended beneficiary of Drus's employment agreement.  As such, Microsoft was an intended beneficiary, and it can enforce the arbitration agreement.  Because the arbitration agreement is valid and enforceable, the Court will "direct [the] parties to proceed to arbitration."  *Atkins*, 724 F. App'x at 389.

### 3.    Stay of the Proceedings

Microsoft also requests that this action be stayed pending the resolution of arbitration.  (*See* Doc. # 9).  "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."  *Smith v. Spizzirri*, 601 U.S. 472, 479 (2024).  Therefore, it will be ordered that this action be stayed pending arbitration.

## III.    CONCLUSION

As discussed above, it would be improper to grant Drus leave to file a surreply because Microsoft did not raise any new issues in its Reply.   Further, compelling arbitration is warranted because the instant arbitration agreement is valid and enforceable and Microsoft, a non-signatory, can enforce it as an intended beneficiary.

Accordingly, **IT IS ORDERED** that:

1)    Microsoft's Motion to Compel Arbitration and Stay Proceedings (Doc. # 9) is hereby **granted**; and

2)    Drus's Motion for Leave to File a Surreply (Doc. # 15) is hereby **denied.**

This 26th day of February, 2026.



Signed By:

*David L. Bunning*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Ashland Civil\2025\25-72-MTC.docx