**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 25-72-DLB-CJS**

**MARINA DRUS** **PLAINTIFF**

**v.** **<u>MEMORANDUM ORDER</u>**

**MICROSOFT CORPORATION** **DEFENDANT**

* * * * * * * * * * * *

This matter is before the Court on Plaintiff Marina Drus's "Objection to Magistrate Judge's Order Denying Plaintiff's Emergency Motion to Restrict Public Access / Re-Seal Affected Materials." (Doc. # 40). Because Plaintiff has failed to show that Magistrate Judge Smith's Order (Doc. # 39) is clearly erroneous or contrary to law, her Objection is **overruled**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Marina Drus alleges that Defendant Microsoft Corporation wrongfully discharged her because of her disability. (Doc. # 1-3). The Court has previously provided a fulsome recitation of the facts, and it refrains from repeating itself here. (*See* Doc. # 28 at 1-3). However, a brief discussion of the procedural history is instructive.

On February 20, 2026, Magistrate Judge Smith denied Plaintiff's prior Motion for Leave to File Documents Under Seal (Doc. # 16) and denied her Consolidated Motion to Proceed Under a Pseudonym and Maintain Complaint Under Seal (Doc. # 20). (Doc. # 27). Shortly after Judge Smith issued her Order (Doc. # 27), this Court granted Microsoft's

Motion to Compel Arbitration and Stay Proceedings.[1] (Doc. # 28). Roughly one month after this Order, Plaintiff filed an Emergency Motion to Restrict Public Access (the "Emergency Motion"). (Doc. # 33). Through her Emergency Motion, Plaintiff asked the Court to: (1) restrict public access to her Consolidated Motion (Doc. # 20) and the attachments unsealed pursuant to Judge Smith's Order (Doc. # 27); (2) permit Plaintiff to file redacted versions of those materials removing identity-linked disability information; and (3) permit Plaintiff to proceed using initials or a pseudonym for future filings. (Doc. # 33 at 8).

After receiving briefing from the parties, Judge Smith denied Plaintiff's Emergency Motion. (Doc. # 39). With respect to Plaintiff's request to re-seal portions of the docket, Judge Smith concluded that Plaintiff failed to overcome the presumption that items in the public record should not be sealed. (*Id.* at 3). Specifically, Judge Smith found that Plaintiff had failed to provide "the detailed analysis required by the case law to justify sealing any documents." (*Id.* at 4 (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305-06 (6th Cir. 2016))). Turning to Plaintiff's request to proceed under a pseudonym, Judge Smith similarly held that Plaintiff failed to establish privacy interests that overcame the substantial public interest in open courts. (*Id.* at 5). Moreover, Judge Smith noted that, as she explained in an earlier Order (Doc. # 27), Plaintiff had waived her right to proceed under a pseudonym by repeatedly disclosing her name in the public record. (Doc. # 33 at 5). Judge Smith also denied Plaintiff's alternative request to proceed using initials, finding it "conclusory and unsupported by citation to legal authority."

---

[1] Despite being represented by counsel in this case, Plaintiff filed a *pro se* Motion to Alter the Court's Order compelling arbitration. (Doc. # 31). Five days later, her attorney filed a Motion for Reconsideration of the same Order on Plaintiff's behalf. (Doc. # 32). The Court ultimately denied both Motions. (Docs. # 34 and 41).

(*Id.* at 6). Fourteen days later, Plaintiff filed the instant Objection (Doc. # 40), which is ripe for the Court's review.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(A), a district judge may designate a magistrate judge "to hear and determine any pretrial matter pending before the court," with the exception of certain dispositive motions. Parties may object to a magistrate judge's order on a non-dispositive matter. Fed. R. Civ. P. 72(a). However, magistrate judges "have broad discretion over discovery and non-dispositive matters." *Cooperrider v. Perry*, No. 3:22-cv-16-GFVT-EBA, 2026 WL 988479, at *1 (E.D. Ky. Apr. 13, 2026) (citation omitted).

A district court may reconsider a magistrate judge's decision on a pretrial, non-dispositive matter, where it has been shown that the magistrate judge's order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d. Cir. 2017)). A factual finding is clearly erroneous if, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Relatedly, an order is "contrary to the law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bisig*, 940 F.3d at 219 (internal quotation omitted).

## III. ANALYSIS

Plaintiff takes issue with "several portions" of Judge Smith's Order. (Doc. # 40). As relief, she asks the Court to set aside the Order and grant the relief she sought in her

Emergency Motion to Seal (Doc. # 33) by: (1) restricting public access to her Consolidated Motion (Doc. # 20) and all attachments that remain unsealed pursuant to the Court's February 20, 2026 Order; (2) permitting Plaintiff to file redacted versions of those materials removing identity-linked disability information while maintaining unredacted versions under seal; and (3) permitting Plaintiff to proceed using initials or a pseudonym for future filings.[2] (Doc. # 40 at 2). Plaintiff divides her Objection into eight substantive subheadings. (*Id.* at 2-11). In light of substantive overlap, however, the Court will consolidate these subheadings into five arguments and address each in turn.

**A. Judge Smith's Consideration of Plaintiff's Alternative Request for Partial Pseudonymity**

Plaintiff argues that Judge Smith's Order incorrectly concluded that "Plaintiff's alternative request [for partial pseudonymity] was 'conclusory and unsupported by citation to legal authority.'" (Doc. # 40 at 2 (quoting Doc. # 39 at 6)). Rather, Plaintiff notes that her Reply included a section titled "Courts Have Granted Pseudonym or Partial-Name Relief in Analogous Cases." (*Id.* at 3). This section included a citation to *Doe v. Metropolitan Government of Nashville and Davidson County*, 694 F. Supp. 3d 1040 (M.D. Tenn. 2023). Therefore, Plaintiff claims that "[t]he finding that the partial-name request was unsupported by citation is therefore erroneous." (Doc. # 40 at 3-4).

The Court disagrees that Judge Smith's characterization was clearly erroneous. Plaintiff rightly points out that her Reply contained a section titled "Courts Have Granted Pseudonym or Partial-Name Relief in Analogous Cases." (*Id.* at 3 (citing Doc. # 36 at

[2] Plaintiff also asks, in the alternative, that the Court grant "the narrower relief proposed in Doc. 36: partial-name or initials-based protection for future filings, together with targeted redactions or restrictions sufficient to prevent continued public association of Plaintiff's full name with identity-linked disability information." (*Id.*).

10)). However, this two-paragraph section cites only one case: *Doe v. Metropolitan Government of Nashville*. (Doc. # 36 at 10). And *Doe v. Metropolitan Government of Nashville* did not concern partial pseudonymity. Rather, in that case, the court allowed a plaintiff to proceed *entirely under a pseudonym*. 694 F. Supp. 3d at 1046 ("Plaintiff's motion (Docket No. 3) is therefore GRANTED and Plaintiff shall be permitted to proceed pseudonymously in this action."). Although Plaintiff's Reply suggested that "Courts Have Granted Pseudonym or Partial-Name Relief in Analogous Cases," she did not identify a single case in which a court granted the kind of partial-name relief that is the subject of her alternative request. (Doc. # 36 at 10-11). Rather, she simply stated that "courts have" granted such relief.[3] Therefore, Plaintiff's alternative request was not supported by citation to applicable legal authority.[4]

### B. Judge Smith's Treatment of Plaintiff's Emergency Motion (Doc. # 33)

Where a party seeks to seal or otherwise avoid the disclosure of judicial records, she must overcome the "'strong presumption in favor of openness' as to court records." *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). This requires a party to identify (1) a compelling interest in sealing the records that (2) outweighs the public's interest in accessing the records and (3) make a request that is narrowly tailored to serve that interest. *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019). The proponent of sealing must "analyze

---

[3] Relatedly, Plaintiff argues that Judge Smith erred by failing to separately address her alternative request for partial pseudonymity. (Doc. # 40 at 9-10). However, as discussed above, Judge Smith did address this request—she simply deemed it conclusory and without support. (Doc. # 39 at 5-6).

[4] Further, the Court finds that partial pseudonymity is unwarranted in this case for the same reasons that full pseudonymity is inappropriate. *See infra* § III.E.

in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Shane Grp.*, 825 F.3d at 305-06 (citing *Baxter Int'l, Inc. v. Abbott Lab.*, 297 F.3d 544, 548 (7th Cir. 2002)).

In her Emergency Motion, Plaintiff identified her previous Consolidated Motion (Doc. # 20) and an attachment thereto (Doc. # 20-2) as the filings she wished to seal. (Doc. # 33 at 8). Her Emergency Motion asked the Court to "restrict public access" to her Consolidated Motion and its attachments and permit her to file redacted versions of those documents, removing identity-linked disability information. (*Id.*). This relief was necessary, Plaintiff alleged, because "[a]fter the Court's order and the resulting public access to the materials at issue, Plaintiff's name became broadly linked online with disability-related litigation information from this case." (*Id.* at 2). Plaintiff claimed that "the affected filings disclose identity-linked medical and disability information in judicial records that are now being indexed and republished in a manner that magnifies the harm from disclosure." (*Id.* at 2-3). This public exposure, Plaintiff continued, directly caused "reputational damage and career harm," which prevented her from obtaining employment. (*Id.* at 4-5). Judge Smith, after considering these arguments, determined that Plaintiff failed to demonstrate that sealing of any record filings was appropriate. (Doc. # 39 at 4). Specifically, Judge Smith found that Plaintiff "only broadly reference[d]" the filings at issue and failed to provide "the detailed analysis required by the case law to justify sealing any documents." (*Id.* (citing *Shane Grp.*, 825 F.3d at 305-06)).

Now, Plaintiff objects and maintains that her Emergency Motion "did more than make a broad reference" to prior filings. (Doc. # 40 at 4). Plaintiff insists that her Emergency Motion "identified the asserted compelling interests, including career harm,

documented PTSD-related harm, financial harm, and the risk of continued public search-engine association between Plaintiff's full name and sensitive disability information." (*Id.*). And Plaintiff states that her Emergency Motion "did identify the affected filings, the asserted harm, and narrower forms of relief." (*Id.*). So, she asks the Court to "review whether the Order's characterization of [the Emergency Motion (Doc. # 33)] as only a broad reference accurately reflects the record." (*Id.*).

Again, the Court cannot find that Judge Smith's "characterization" of Plaintiff's Emergency Motion was clearly erroneous. As the proponent of sealing, Plaintiff bore "the burden of showing that 'disclosure will work a clearly defined and serious injury[.]'" *Shane Grp.*, 825 F.3d at 307 (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)). "And, 'in delineating the injury to be prevented, specificity is essential.'" *Id.* (quoting *Cendant*, 260 F.3d at 194). The Sixth Circuit has observed that such specificity requires the proponent of sealing to analyze in detail, "document by document, the propriety of secrecy" and provide legal justifications for nondisclosure. *Id.* at 305-06. True, Plaintiff's Emergency Motion *did* identify the filings at issue. But it did not go through each document in detail, on a "line-by-line basis" and identify the specific disability-related information that warrants sealing. *Id.* at 308.

Judge Smith recognized that the Emergency Motion explains how an increase in search indexing has affected Plaintiff, generally. (Doc. # 39 at 4). Nevertheless, Judge Smith concluded that Plaintiff failed to conduct the requisite examination of each document she proposed to seal, identifying the specific disability-related information at issue and explaining the need for secrecy. (*Id.*). Looking to Plaintiff's Emergency Motion, the Court agrees with Judge Smith. Although Plaintiff asked the Court to permit her leave

to redact "identity-linked disability information" from her Consolidated Motion and its accompanying attachment, she did not identify what this information was, where it occurred in the Consolidated Motion, or why each instance warranted sealing. (Doc. # 33 at 8). Instead, Plaintiff offered a generalized explanation for why the Consolidated Motion and attachments, as a whole, must be sealed. Thus, she failed to provide the sufficiently detailed analysis required by law. *See Shane Grp.*, 825 F.3d at 305-06.

**C. Judge Smith's Treatment of Plaintiff's Reply**

Next, Plaintiff objects to Judge Smith's statement, in a footnote, that portions of Plaintiff's Reply in Support of her Consolidated Motion were "either overly repetitive or [] beyond the scope of her requests to restrict public access and to proceed via a pseudonym." (Doc. # 40 at 4-5 (citing Doc. # 39 at 2 n.3)). Acknowledging that her Reply exceeded the length permitted by the Local Rules, Plaintiff states that "[t]he arguments and authority at issue appeared within the first fifteen pages of the Reply[.]" (*Id.* at 5). Plaintiff contends that her Reply "addressed distinct components of the relief sought [in her Consolidated Motion]" and "respectfully submits that the generalized footnote does not provide enough explanation for meaningful Rule 72(a) review." (*Id.*). So, she "asks the District Judge to review the portions of the Reply that supplied the analysis the Order found lacking, particularly the arguments and authority within the first fifteen pages." (*Id.*).

But Plaintiff fails to direct the Court to the "portions of the Reply" that she believes went unaddressed. (*Id.*). With this objection, Plaintiff essentially asks the Court to reexamine the Emergency Motion independently of Judge Smith's Order without identifying specific points of contention. This kind of "objection" is impermissibly vague. *See Cole v. Yukins*, 7 F. App'x 654, 653 (6th Cir. 2001) ("The filing of vague, general, or

conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object.") (citation omitted). Nevertheless, out of an abundance of caution, the Court will discuss some of the arguments Plaintiff raised in the first fifteen pages of her Reply.

First, Plaintiff argued that she is suffering a harm that is "concrete, direct, traceable, and causally linked." (Doc. # 36 at 1). The Court will address this argument in connection with Plaintiff's objection that she suffered harm beyond general embarrassment. *See infra*, § III.E. Plaintiff also argued that "ADA claims should permit privacy protection where disclosure causes harm." (*Id.* at 13-14). This policy argument collapses into the Court's treatment of Plaintiff's objection that she suffered harm that warrants nondisclosure. Because these arguments are addressed below, the Court will not discuss them here.

Second, Plaintiff's Reply argues that "Microsoft's conduct in these proceedings has caused concrete harm and demonstrates why arbitration is not a viable forum."[5] (*Id.* at 14-15). Plaintiff argues that "[t]he issues presented in this case—public disclosure, employment harm, and the forum question—are not separate matters. They form a single, interconnected chain of harm." (*Id.* at 15). She continues that the public association of her identity with this litigation "is the direct cause of her inability to secure employment" and that this inability has "worsened Plaintiff's condition, as documented by her treating therapist." (*Id.*). And Plaintiff blames "Microsoft's posture in these proceedings[,]" including its attempt to "force Plaintiff into closed arbitration," for exacerbating her condition. (*Id.*).

---

[5] This argument appeared on pages 14 through 17 of Plaintiff's Reply. The Court will only consider the argument presented on pages 14 and 15. *See* L.R. 7.1(d) ("Replies may not exceed 15 pages without leave of Court.").

Perhaps due to the fact that this section bleeds onto pages beyond the remit of Plaintiff's Reply, the Court is unable to grasp the point of this argument. The Court appreciates Plaintiff's assertion that the "issues presented in this case" are interrelated. (Doc. # 36 at 15). However, that sheds little light on the propriety of sealing Plaintiff's Consolidated Motion or allowing pseudonymity. And although Plaintiff takes umbrage with "Microsoft's posture" and its characterization of her motions, she does not claim that Microsoft has violated any ethical or procedural rule. (*Id.*). Additionally, that Microsoft sought to compel arbitration, distressing as it may be, does not entitle Plaintiff to the relief she sought in her Emergency Motion. On the contrary, Microsoft was within its rights to seek arbitration, and the Court ultimately granted Microsoft's Motion to Compel Arbitration. (Doc. # 28; *see also* Doc. # 41 (denying Plaintiff's Motion to Reconsider)).

Next, Plaintiff's Reply argued that "Microsoft's arguments disregard the governing disability framework." (Doc. # 36 at 11-13). Plaintiff claims that Microsoft's Response (Doc. # 35) "treat[ed] Plaintiff's periods of ordinary functioning as dispositive evidence against disability" and "departed from the very framework that governs ADA analysis." (*Id.* at 11). This appears to conflate the merits of Plaintiff's ADA claim with the standard governing motions to seal or proceed under a pseudonym. Plaintiff asserts that Microsoft misinterprets the "governing disability standard" by deeming Plaintiff's "periods of ordinary functioning as dispositive evidence against disability." (*Id.*). Instead, she argues that "[t]he correct ADA inquiry is how limiting the disability is when symptoms are present." (*Id.* at 13). However, whether Plaintiff is "disabled"—as that term is used in the ADA—has nothing to do with Plaintiff's request to seal documents or proceed under a pseudonym.

Finally, Plaintiff's Reply claimed that "Plaintiff's case is distinguishable" from the cases cited by Microsoft—namely, *Ransbottom v. Ashton*, *Doe v. Kentucky Community & Technical College System*, and *Doe v. Carson*. (*Id.* at 8).

### *1.* Ransbottom v. Ashton

With respect to *Ransbottom*, Plaintiff argues that her case is distinct in two respects. First, she claims that, unlike the *Ransbottom* movant, she has established "concrete consequences *beyond* emotional distress" including "documented employment disruption, financial deterioration, risk of housing loss, and medical records showing escalated symptoms and exhausted treatment options." (*Id.* at 9). Second, Plaintiff states that Microsoft's application of *Ransbottom* "creates a circular barrier" which "effectively forecloses" plaintiffs from bringing ADA cases involving mental health disabilities. (*Id.*).

In *Ransbottom*, a court in the Middle District of Tennessee denied a plaintiff's motion to proceed pseudonymously. 2021 WL 2651188, at *8. In reaching this decision, the *Ransbottom* court considered the four *Porter* factors, as well as several additional factors. *Id.* at *4-5. Among these additional factors was the "risk of psychological and other harm to the plaintiff." *Id.* at *6. The court concluded that psychological harm could, in certain circumstances, be the type of injury that might justify permitting a plaintiff to proceed under a pseudonym. *Id.* However, the court found that the plaintiff in that case failed to establish that proceeding under her own name would inflict a harm that outweighed the public's interest in open courts. *Id.* at *7. Although the *Ransbottom* plaintiff provided declarations from herself and her treating psychiatrist, the court found that this factor offered "very little, if any, support to her request to proceed under a pseudonym." *Id.* at *8. Specifically, the *Ransbottom* court highlighted the fact that the

psychiatrist's declaration did not identify a specific diagnosis, offer a connection between the plaintiff's therapy and her allegations, or identify specific harm that would result from disclosure of her name. *Id.* at *7. Further, the court noted that the declaration did not state how long the plaintiff had been under the declarant's care, or the relative severity of her symptoms. *Id.* And the *Ransbottom* court concluded that a plaintiff seeking to proceed under a pseudonym to avoid psychological distress must show that proceeding publicly would cause her to "decompensate psychologically to a point which she could not . . . pursue the current legal process and would suffer severe risk to her safety and to her survival." *Id.* at *6 (quoting *Doe v. Del Rio*, 241 F.R.D. 154, 161 (S.D.N.Y. 2006) (internal quotation omitted)). Because the plaintiff did not show that she would suffer such harm, the *Ransbottom* court denied her motion to proceed under a pseudonym. *Id.* at *7.

Here, Plaintiff claims that her case is different because she identified concrete harms beyond mere "emotional trauma." (Doc. # 36 at 9). For the reasons discussed in § III.E, many of these proffered injuries—Plaintiff's inability to find employment, increased debt, the specter of homelessness—bear a speculative connection to the fact that Plaintiff's name is associated with this case. And this kind of "reputational harm" or damage to one's marketability and commercial welfare do not constitute compelling reasons for nondisclosure. *See Kiwewa v. Brennan*, No. 1:15-cv-815, 2018 WL 3611990, at *2 (S.D. Ohio July 27, 2018). Plaintiff did submit a note from her therapist opining that the public disclosure of Plaintiff's name in connection with this litigation has led to "acute psychological distress."[6] (Doc. # 20-1 at 1). This note contains much of the information

---

[6] It is worth noting that this letter, which contains specific information about Plaintiff's mental health history, remains under seal.

that the *Ransbottom* court found lacking: identification of a mental health condition, specified symptoms, and the duration of care.

However, *Ransbottom* does not bind this Court. And the Court's ultimate decision on whether pseudonymity is warranted does not hinge on a single factor. Plaintiff herself maintains that a significant cause of her symptoms is her inability to obtain employment and the concomitant financial difficulties. (*See* Doc. # 36 at 6-7 (stating that "[t]hese cascading consequences have materially exacerbated Plaintiff's medical condition, as confirmed by her treating professionals")). But the Court is not convinced that Plaintiff's inability to find employment is due to her public involvement in this case. Rather, as Plaintiff recognizes, the gaps in her employment history shoulder much of the blame in this regard. (Doc. # 36 at 4).

### *2.* Doe v. Kentucky Community & Technical College System

In *Doe v. Kentucky CTCS*, this Court denied a plaintiff's request to proceed under a pseudonym. No. 7:20-cv-6-DLB, 2020 WL 998809, at *4 (E.D. Ky. Mar. 2, 2020). In that case, a plaintiff sued his former employer and wished to remain anonymous partly due to fears that he would "suffer reputational harm which [would] impact both his professional and personal life." *Id.* at *3. But he failed to provide sufficient evidence that he would actually suffer such harm. *Id.* And the Court reiterated that the mere potential for "the [p]laintiff to be ridiculed, embarrassed, or stigmatized as a result of a lawsuit, or to be scrutinized by future employers is *not sufficient* to require the use of pseudonyms." *Id.* (emphasis in original) (citation omitted). After all, the plaintiff had "*chosen* to sue his former employer, knowing that such a choice may open him up to public scrutiny." *Id.* (citing *D.E. v. Doe*, 834 F.3d 723, 728 (6th Cir. 2016)). Taking these facts together, the

plaintiff's privacy interests did not outweigh the presumption of openness in judicial proceedings.

Plaintiff argues that *Kentucky CTCS* is distinguishable because, unlike the plaintiff in that case, her fears of employer scrutiny are supported by concrete evidence of "failed hiring processes, sudden rejections after interviews advanced to later stages, documented communications from recruiters and hiring panels questioning her resume gaps and short term contracts," and financial distress. (Doc. # 36 at 10). The Court is unconvinced. Even crediting Plaintiff's assertion that many employers search applicants' names prior to proceeding with the hiring process, the Court is unable to conclude that search results connected to this litigation are the cause of Plaintiff's inability to find employment. Rather, as Plaintiff herself acknowledges, gaps in her resume—which have nothing to do with the publicity of this lawsuit—are largely responsible for her difficult job search. (Doc. # 33 at 4 (arguing that her termination from Microsoft, coupled with a difficult economic climate, resulted in employment gaps which made it significantly harder for Plaintiff to secure new work)). Moreover, much like the *Kentucky CTCS* plaintiff, Plaintiff must have known that, by choosing to sue her former employer, she would open herself up to public scrutiny. 2020 WL 998809, at *3. That is a bedrock principle of our open judicial system.[7]

**D. Plaintiff's Withdrawal of Her Request to Seal**

Plaintiff also objects to the Order's conclusion that she waived her right to proceed pseudonymously by voluntarily and repeatedly disclosing her name in the public record.

---

[7] Plaintiff's Reply also argues that Microsoft's reliance on *Doe v. Carson*, No. 19-1566, 2020 WL 2611189 (6th Cir. May 6, 2020) is misplaced and that her situation is distinguishable. (Doc. # 36 at 10). The applicability of *Doe v. Carson* will be addressed in § III.E.

(Doc. # 40 at 5 (citing Doc. # 39 at 5)). In her Reply in support of her Consolidated Motion, Plaintiff withdrew her request to seal the Complaint and "clarifie[d] that she seeks only the narrow remedy of pseudonymity[.]" (Doc. # 23 at 1). But Judge Smith found that Plaintiff "has 'waived any right to proceed pseudonymously by voluntarily and repeatedly disclosing her name in the public record.'" (Doc. # 40 at 5 (quoting *Boardman v. Ohio State Univ.*, No. 2:23-cv-3566, 2024 WL 1462771, at *3 (S.D. Ohio Apr. 4, 2024))). Indeed, following removal to this Court, Plaintiff filed several documents identifying herself by name on the public record (*See, e.g.*, Docs. # 13, 15, 16, 19, 21, 23). Plaintiff, however, objects that these filings occurred "while protective relief remained pending" and argues that "this circumstance should not be treated as a knowing forfeiture of all identity-protection remedies." (Doc. # 40 at 6).

The Court disagrees. Plaintiff initially filed her Complaint in Boyd County Circuit Court under her own name. (Doc. # 1-3). True, several weeks after initiating the action, she moved to seal the Complaint in state court. (Doc. # 1-6). But this does not explain her failure to seek pseudonymous relief from the start. Even after this case was removed to this Court on August 5, 2025, Plaintiff did not seek to proceed under a pseudonym until October 1, 2025, when she filed her Motion for Leave to File Under Seal. (Doc. # 16). During the intervening period, Plaintiff continued to file documents in the public record with her full name. (*See* Docs. # 13 and 15). While the Court appreciates Plaintiff's argument that her public association with this case increased following the Court's Order on February 20, 2026, the Court disagrees that this "changed the practical harm" she experienced. (Doc. # 40 at 6-7). Plaintiff acknowledges that her name was publicly associated with this case long before the Court's Order. (*See* Doc. # 36 at 3 (alleging

that Plaintiff's name was publicly associated with this lawsuit on November 16, 2025)). Moreover, Plaintiff could have filed under a pseudonym while her request for "protective relief remained pending." (Doc. # 40 at 6). Indeed, in *Boardman*, the Southern District of Ohio found that a plaintiff waived his right to pursue pseudonymity by submitting filings in his full name "even after moving to proceed pseudonymously." 2024 WL 1462771, at *3. Here, Plaintiff has *never* made any filings under a pseudonym, she submitted briefing and motions in her full name prior to seeking pseudonymity (Docs. # 13 and 15), and she continued to file in her full name after seeking pseudonymity (Docs. # 16, 19, 20, 21, 23). Accordingly, Judge Smith's determination that Plaintiff waived her right to proceed pseudonymously was not clearly erroneous or contrary to law.

**E. Harm Suffered Beyond General Embarrassment**

Plaintiff objects to Judge Smith's conclusion that the prosecution of this case would not require Plaintiff to publicly disclose information of the utmost intimacy. (Doc. # 40 at 7). Rather, Plaintiff contends that she has shown "more than embarrassment or humiliation" and that these more tangible injuries warrant the Court's review. (*Id.* at 8).

In general, parties have no right to proceed under a pseudonym. *See* Fed. R. Civ. P. 10(a). However, in "exceptional case[s]" parties may litigate under a fictitious name. *Carson*, 2020 WL 2611189, at *2 (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (per curiam)). This is appropriate only if the reviewing court determines that "a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings[.]" *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). Several considerations bear on this determination, including: (1) whether the plaintiff is challenging a governmental activity, (2) whether the plaintiff will be forced to "disclose information 'of

the utmost intimacy,'" (3) whether information disclosed during the litigation may lead to criminal prosecution of the plaintiff, and (4) whether the plaintiff is a child. *Id.* (quoting *Doe v. Stegall*, 653 F.2d 180, 185-86 (5th Cir. 1981)).

As Judge Smith observed, the only factor which even arguably favors pseudonymity is the second. (Doc. # 39 at 5). But, ordinarily, "concerns about stigma and scrutiny from prospective employers do not involve information 'of the utmost intimacy;' rather, they constitute the type of concerns harbored by other similarly situated litigants who file lawsuits under their real names." *Carson*, 2020 WL 2611189, at *2; *see also Koe v. Univ. Hosp. Sys., Inc.*, No. 22-3952, 2024 WL 1048184, at *2 (6th Cir. Mar. 8, 2024) (affirming denial of a motion to proceed under pseudonym where the plaintiff argued that litigating in his full name would require him to disclose intimate information about his mental health). Plaintiff argues that, unlike the plaintiffs in *Carson* and *Koe*, she has identified "specific harm from disclosure" that bolsters her privacy interest. (Doc. # 40 at 7-8). She identifies "credit-card debt that grew from approximately $40,000 to more than $50,000 during the period of public association . . . near-foreclosure on Plaintiff's home; and clinical documentation of worsening PTSD, including psychiatric medication increased to maximum dosage[.]" (*Id.* at 8).

Plaintiff also claims that "online search indexing" has linked her name to this litigation and the "disability-related information" involved. (Doc. # 33 at 6-7). And in her Reply, Plaintiff recounts three interview experiences shortly after the Court's Order in which she did not receive a job offer, despite being "told she performed well." (Doc. # 36 at 6-7). She speculates that this was due to employers discovering publicly available information related to this case. (*Id.* at 7). But this kind of speculative effect on Plaintiff's

employability does not overcome the presumption against sealing. *See Shane Grp.*, 825 F.3d at 307; *Kiwewa*, 2018 WL 3611990, at *2 ("Accepting as true plaintiff's claim that information in the case record is harmful to his reputation and his ability to obtain employment, reputational harm does not outweigh the public's right to know about the court proceedings and filings.").

But Plaintiff does not even allege that public disclosure of her Consolidated Motion and associated attachments is the sole reason she cannot obtain employment. Elsewhere in her briefing, Plaintiff blames her inability to find employment on gaps in her resume that came after her termination from Microsoft in July of 2024. (Doc. # 36 at 4). But these gaps were not caused by Plaintiff's public association with this case—rather, they were caused by her termination from Microsoft. (Doc. # 33 at 4 ("The Microsoft termination occurred during a difficult economic climate, which compounded the employment gap it created and made it significantly harder for Plaintiff to secure new work.")). Further, although Plaintiff claims that her association with this litigation has *increased* following the Court's Order, she acknowledges that prospective employers have been able to associate her identity with this case as far back as November of 2025. (*See* Doc. # 36 at 3 (noting that a November 16, 2025 Google search for "Marina Drus" returned "lawsuit-related results appearing lower on the page alongside academic publications and professional content")). If prospective employers have long been able to connect Plaintiff's identity to this litigation, the Court finds it tenuous that a mere increase in search results bears the blame for Plaintiff's struggle to obtain employment. Relatedly, the financial harms Plaintiff identifies—increased credit card debt, missed mortgage payments, the prospect of homelessness—are downstream from her inability

to obtain employment. (Doc. # 36 at 7). Moreover, as Judge Smith noted, even if the Court were to grant Plaintiff leave to proceed under a fictitious name, "it would be impossible for her to proceed anonymously in this action" because her name also appears on the Boyd Circuit Court docket in connection with this case. (Doc. # 27 at 3 (citing *Drus v. Microsoft Corp.*, No. 25-CI-509)).

True, unlike the plaintiffs in *Carson* and *Koe*, Plaintiff has alleged specific medical harm in the form of worsening PTSD symptoms. *See supra* § III.C.1. However, even if the Court finds that the second *Porter* factor tips in Plaintiff's favor, it is unconvinced that Plaintiff has carried her burden of establishing that her privacy interests "*substantially* outweigh the presumption of open judicial proceedings." *Porter*, 370 F.3d at 560 (emphasis added). None of the other *Porter* factors suggest that pseudonymity is appropriate. Plaintiff does not challenge governmental activity, prosecution of this case will not risk exposing her to criminal prosecution, and she is not a child. Considering these facts and weighing them against the strong presumption in favor of open courts, Plaintiff has failed to carry her burden and establish entitlement to pseudonymity.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, Plaintiff's Objection (Doc. # 40) to Judge Smith's June 25, 2026 Order (Doc. # 39) is **overruled**.

This 14th day of October, 2026.

**Signed By:**
***David L. Bunning*** DB
**Chief United States District Judge**